Wanda M. DAMREL, Appellant,

v.

Jesse BROWN, Secretary of Veterans
Affairs, Appellee.

No. 93–171.

United States Court of Veterans Appeals.

Feb. 18, 1994.

Wanda M. Damrel, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Deborah W. Singleton, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and KRAMER and MANKIN, Judges.

KRAMER, Judge:

Appellant, Wanda M. Damrel, appeals a February 12, 1993, decision of the Board of Veterans' Appeals (BVA) which determined that there was no clear and unmistakable error (CUE) in an unappealed July 1967 rating decision denying a total disability rating based on individual unemployability, and which denied entitlement to dependency and indemnity compensation (DIC) benefits under 38 U.S.C. § 1318. The Court has jurisdiction pursuant to 38 U.S.C. § 7252(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Eugene C. Damrel (the veteran) served on active duty from September 1941 to June 1945. R. at 18. He was a prisoner of war (POW) of the German Government from September 1944 to January 1945. R. at 18, 38, 77. At separation, the veteran was awarded a special monthly compensation for the anatomical loss of one hand (hand was amputated due to combat injury in Germany). R. at 85, 97. In 1947, the veteran was granted service connection for amputation of the right forearm, rated as 70% disabling, and was also assigned a noncompensable rating for a scar on his scalp due to a gunshot wound. R. at 97.

On July 6, 1967, the veteran filed two claims: (1) service connection for an anxiety reaction secondary to his amputation, and (2) a total disability rating based on individual unemployability. R. at 126–27. The evidence at that time consisted of: (1) service medical records (R. at 17–37), (2) a January 1947 VA examination report (R. at 85–94), and (3) VA medical records from 1964 to 1966 (R. at 99–120, 253–55). Only the latter VA medical records showed an anxiety reaction, but these records did not attribute the disorder to service. On July 11, 1967, the veteran filed an Income–Net Worth and Employment Statement with the VA, in which he noted that he was not receiving any benefits from the Social Security Administration (SSA). R. at 123–24. On July 31, 1967, the Regional Office (RO) denied the veteran's claims by stating:

> The evidence in its entirety fails to show that the anxiety reaction is the result of [the service-connected] disability. Veteran was gainfully employed for a number of years and no change is shown in [the service-connected] disability which would preclude resumption of gainful employment.

R. at 134. The veteran did not appeal this decision.

The veteran attempted to reopen the claims for anxiety reaction and individual unemployability in 1982, and informed the VA that the SSA found him totally and permanently disabled and that he had received disability benefits from the SSA for almost 20 years. An October 1982 psychiatric examination revealed that veteran had been receiving Social Security benefits since 1965, and the examiner noted his belief that the veteran was probably unemployable as a result of a service-connected psychiatric disability. R. at 145. In November 1982, the RO granted the veteran service connection for his anxiety reaction, rated as 10% disabling, pursuant to Act of Aug. 14, 1981, Pub.L. No. 97–37, § 4(a), 95 Stat. 936 (1981) (which amended 38 U.S.C. § 1112(b) by including anxiety as a presumptive disease for former POWs), and denied a total disability rating based on individual unemployability. R. at 159–60.

An addendum to the October 1982 examination, written by Dr. James Carrie in December 1982, stated that as a result of the October 1982 examination, "[i]t was considered that the frequency of recurrence of [the veteran's anxiety attacks] was such as to preclude employment in the competitive job market." R. at 163. In January 1983, the RO increased the veteran's rating for anxiety reaction to 30%, but a total disability rating based on unemployability was again denied. R. at 166.

The veteran died in December 1988, and the certified cause of death was cardiac arrest due to congestive heart failure, a ruptured abdominal aortic aneurysm, and acute respiratory distress. R. at 209. At the time of the veteran's death, he had a combined disability evaluation of 80% for service-connected disabilities (amputation of right forearm, rated at 70%, and an anxiety reaction, rated at 30%). R. at 166–67. That same month, appellant, the veteran's widow, filed an application for DIC benefits based on service connection for the cause of death. R. at 176–79. Included with the application was a copy of a November 1966 letter from the VA, indicating that the veteran was found totally disabled for insurance purposes, and that he was entitled to a waiver of premiums on his government life insurance policy. R. at 188. The RO denied appellant's claim in April 1989 because the inception of the disability causing the veteran's death was too remote from service, and such disability was not shown to be due to his service-connected disabilities or his POW experience. R. at 211.

At an October 1990 hearing before the BVA on the issue of entitlement to service connection for the cause of the veteran's death, appellant also requested entitlement to DIC benefits under 38 U.S.C. § 1318 (formerly section 418), which relates to benefits for survivors of certain veterans rated totally disabled for a period of at least ten consecutive years at time of death. R. at 270–81. On February 26, 1991, the BVA denied the claim of service connection for the cause of the veteran's death, but referred the section 1318 claim to the RO for adjudication. R. at 284. In March 1991, the RO denied entitle-

ment to DIC benefits under section 1318. R. at 291. In August 1991, appellant filed a Notice of Disagreement, and then filed her substantive appeal, asserting that the July 1967 and 1983 rating decisions were erroneous in not assigning a total disability rating because the medical reports indicated that the veteran was unemployable from 1967 onward. R. at 296–97, 305–07. Appellant's representative asserted that the 1967 decision was the product of CUE. R. at 315.

In February 1993, the BVA determined there was no CUE in the prior unappealed July 1967 RO decision, which denied a total disability rating based on individual unemployability. The BVA did not address the issue of CUE in the January 1983 RO decision. The Secretary filed a motion for summary affirmance, noting that the BVA decision was not arbitrary and capricious, and that appellant did not properly raise a CUE claim for the 1983 decision. The Secretary further argues that even if appellant did properly raise the issue of CUE in the 1983 decision, any failure by the BVA to consider such a claim is harmless error because the veteran died in 1988, only five years after the 1983 decision, and would therefore not have been rated totally disabled for at least 10 consecutive years at the time of his death.

## II. PERTINENT LAW AND ANALYSIS

■ Pursuant to 38 U.S.C. § 1318(b)(1), the surviving spouse of a veteran who dies from an injury or disease which is not service connected is nevertheless entitled to receive DIC benefits in the same manner as if the veteran's death was service connected, provided that the veteran was continuously rated totally disabled for a period of 10 years or more preceding death. Furthermore, where the veteran would have been entitled to receive compensation at the time of death for a service-connected disability, and would have met the duration requirements of section 1318(b), but for CUE in a prior rating action, benefits authorized under section 1318 shall be paid to the deceased veteran's surviving spouse. *See* 38 C.F.R. § 3.22(a)(2) (1993). Thus, the language of these statutory and regulatory provisions permit an award of DIC benefits under section 1318 where the deceased veteran's total disability status could be established on the basis of CUE in a prior rating action which had caused the veteran to fall short of meeting the duration requirements.

■ The issue presented in this appeal is whether prior rating decisions were the product of CUE so that the veteran could have received a total disability rating for at least 10 consecutive years prior to his death, thus entitling appellant to DIC benefits under section 1318(b)(1). Appellant alleges CUE in the 1967 and 1983 RO decisions. The BVA determined that there was no CUE in the 1967 decision, but did not specifically address the 1983 decision. Under 38 C.F.R. § 3.105(a) (1993), a prior decision must be reversed or amended where evidence establishes CUE. In *Russell v. Principi*, 3 Vet. App. 310, 313–14 (1992) (en banc), this Court propounded a three-pronged test to determine whether CUE is present in a prior determination: (1) "[e]ither the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at the time were incorrectly applied," (2) the error must be "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made," and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question.

■ In *Fugo v. Brown*, 6 Vet.App. 40, 44 (1993), the Court, after reiterating its prior test for CUE in *Russell*, refined and elaborated on that test by holding that if an appellant wishes to reasonably raise CUE, "there must be some degree of specificity as to what the alleged error is and, unless it is the kind of error … that, if true, would be CUE on its face, persuasive reasons must be given as to why the result would have been *manifestly* different but for the alleged error."

### A. THE JULY 1967 RATING DECISION

Appellant contends, in essence, that the July 1967 rating decision was CUE because

the evidence before the RO indicated that the veteran was totally unemployable, as the veteran had been rated totally disabled for insurance purposes by the VA in 1966 and had also been receiving Social Security benefits since 1965 for his disability.

■ First, appellant's argument that the RO misevaluated and misinterpreted the evidence available to it at the time is not the type of administrative error reversible under 38 C.F.R. § 3.105(a). *See Fugo*, 6 Vet.App. at 44; *Russell*, 3 Vet.App. at 313. In this regard, appellant has simply asked the BVA and this Court to reweigh the evidence.

■ Second, as to the SSA payments, evidence that the veteran had been receiving Social Security benefits since 1965 was not in the record in 1967. Because the veteran did not indicate at the time he filed his claim with the VA in 1967 that he was receiving such benefits, the Secretary had no actual notice that the records existed in 1967. In addition, the Secretary will not be deemed to have had constructive notice of such records. *See Murincsak v. Derwinski*, 2 Vet.App. 363, 369–70 (1992). Furthermore, even if the VA had known that appellant was receiving SSA benefits, SSA decisions regarding unemployability, although relevant, are not controlling for VA determinations. *See Murincsak, supra*, at 370.

■ Third, as to the information that the veteran was rated totally disabled for VA insurance purposes in 1966, such evidence was not provided to the RO until December 1988, when appellant applied for DIC benefits. While the Secretary is deemed to have constructive knowledge of such insurance ratings, *see Bell v. Derwinski*, 2 Vet.App. 611, 613 (1992), the question is whether the information should be deemed to be in the record as of 1967. The answer is no. Under *Russell*, 3 Vet.App. at 314, only the "law that existed at the time" of the prior adjudication (i.e., 1967) can be considered. The constructive notice rule of *Bell* was not formulated until 1992, and under *Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991), the earliest date on which the Secretary is deemed to have constructive notice is the date of the filing of the CUE claim. Thus, August 1991 is the earli-

est point in time that the insurance rating is deemed to be in the record. Furthermore, even if the adjudicator had known of this information, the fact that appellant was determined to be totally disabled for insurance purposes is not controlling with respect to ratings for compensation or pension. *See* 38 C.F.R. § 3.340(c) (1993).

Based on the above, the Court concludes that the BVA's determination that CUE was not present in the 1967 RO decision was not "arbitrary, capricious, or an abuse of discretion." 38 U.S.C. § 7261(a)(3)(A). *See Russell*, 3 Vet.App. at 315.

## B. THE JANUARY 1983 RO DECISION

■ Appellant asserts that the 1983 RO decision denying total disability based on unemployability is inconsistent with the evidence that was before the RO at that time. As with the 1967 RO decision, appellant has simply asked the BVA and the Court to reweigh the evidence before the RO in 1983. The kind of error alleged (improperly weighed and evaluated evidence) "can never rise to the stringent definition of CUE" under 38 C.F.R. § 3.105(a), and is not the type of administrative error reversible under that statutory provision. *Fugo*, 6 Vet.App. at 44. Furthermore, even assuming that CUE was present in the 1983 RO decision, appellant would still not be entitled to DIC benefits under 38 U.S.C. § 1318 because the veteran would not have been rated totally disabled for 10 or more years prior to his death, but only for five years. Therefore, the BVA's failure to address this claim was harmless error. *See* 38 U.S.C. § 7261(b).

## III. CONCLUSION

Based upon the above analysis, the BVA decision is AFFIRMED.